IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALPHA SUPPLY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN OSHIRO,<br><br>Defendant. | Civil No. 26-cv-00511 MWJS RT<br><br>OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION ON CONSENT |

**INTRODUCTION**

Plaintiff Alpha Supply, LLC (Alpha) brings a motion for an *ex parte* temporary restraining order and preliminary injunction (the "Motion"), seeking an order requiring Defendant Brian Oshiro to (1) refrain from "directly or indirectly retaining, disclosing, or otherwise using for any purpose" allegedly confidential information belonging to Alpha, (2) "permanently and irrevocably delete all Alpha files . . . in his custody or control," (3) certify under oath his compliance with the requirements of (1) and (2) and identify all locations where he saved Alpha property, and (4) "provide Alpha with temporary custody and/or access to any such storage media for the purpose of Alpha's forensic analysis." Dkt. No. 2, at PageID.25–26.

At a hearing on October 6, 2026, Oshiro, through counsel, consented to the entry of the requested preliminary injunction. In consenting to this relief, Oshiro's counsel

made clear that he was not making any admissions on the merits of the case, and that he reserved the right to request modifications to the preliminary injunction as needed in the future. Oshiro's consent to the entry of the requested preliminary injunction is, instead, made to avoid unnecessary emergency litigation and to create breathing space for the parties to discuss a possible settlement of this matter. The court commends Oshiro and his counsel for these reasonable concessions.

On these understandings, and because—at least at this early stage and on the existing record—the requested relief is appropriate, the court enters the preliminary injunction set out at the end.

**BACKGROUND**

Alpha is a wholesale distributor of electrical supplies. Dkt. No. 2-1, at PageID.31. In 2023, it offered Defendant Brian Oshiro a job as its Director of Engineering and Estimating. *Id.* at PageID.32. The offer letter Oshiro signed contained provisions prohibiting Oshiro from disclosing confidential information or trade secrets or from removing confidential information from Alpha's premises without prior written consent. *Id.* Upon starting employment with Alpha, Oshiro signed an employee agreement which similarly provided that Oshiro would not disclose confidential information and memorialized that "the parties agree" that in the event of a threatened or actual disclosure, "[Alpha] shall be entitled to an appropriate injunction." *Id.* at PageID.34–35.

On September 24, 2026, Alpha learned that Oshiro was unhappy and planned to leave Alpha and to potentially seek employment with one of Alpha's competitors. *Id.* at PageID.38. Sometime thereafter, Alpha's IT vendor discovered that Oshiro had downloaded over 12,000 Alpha files to his personal device between September 3 and September 23 without authorization. *Id.* at PageID.39. Alpha contends that those files included "a massive amount of highly proprietary and sensitive information," such as product specifications, financial information, and customer contracts. *Id.* at PageID.39–40. On September 28, 2026, Oshiro admitted to downloading the files and stated that he would delete them. *Id.* at PageID.40. Alpha then terminated Oshiro's employment. *Id.*

Alpha subsequently sent Oshiro a letter memorializing his termination and requesting that he certify that "(a) [he has] permanently and irrevocably deleted all Alpha property (including copies thereof) in [his] possession or control, (b) [he] no longer possess[es] any Alpha property; and (c) [he has] not shared any Alpha property with anyone outside Alpha." *Id.* at PageID.41. The letter stated that his "failure to provide this certification and accurate information [would] be deemed an ongoing, willful, and unlawful retention of company property." *Id.* Oshiro repeatedly refused to sign the certification. *Id.* at PageID.42–43. But in an email dated September 29, 2026, Oshiro represented that he had not shared and did not plan to share the documents with "any competitor or entity other than my legal counsel." Dkt. No. 2-8, at PageID.67.

Oshiro further represented that he would "require one week from today (10/6/26) to reasonably meet and receive consultation from my lawyer." *Id.*

Two days later, on October 1, 2026, Alpha filed its complaint in this case, Dkt. No. 1, as well as the Motion, Dkt. No. 2. The Motion argues that a temporary restraining order should be entered, under Rule 65(b) of the Federal Rules of Civil Procedure, before Oshiro has received notice of the Motion and an opportunity to be heard on it. It further argues that, once Oshiro has had an opportunity to be heard, a preliminary injunction should be entered.

On October 2, 2026, this court held a status conference at which Alpha appeared through counsel. Oshiro, who had not yet been served with the complaint or the Motion papers, was not present. The court declined to grant the Motion at that time, but set a further status conference for October 6, 2026. Dkt. No. 11.

Oshiro was served with the complaint on October 3, 2026. Dkt. No. 12. Alpha's counsel confirmed at the October 6 hearing that Oshiro was served with the Motion papers at that same time. As noted above, Oshiro, through counsel, consented to the entry of the requested preliminary injunction at that time.

**DISCUSSION**

Although Oshiro consents to the entry of the preliminary injunction, the court must still assure itself that the record—as it currently exists—supports this requested relief. *See Child Evangelism Fellowship of Haw., Inc. v. Haw. State Dep't. of Educ.*, Civ. No.

24-00034, 2024 WL 3233996, at *3–4 (D. Haw. June 27, 2024) (analyzing whether the record offered at least "colorable factual and legal grounds for the relief" requested, even in the face of opposing party's lack of opposition). Alpha must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent the order, (3) that the balance of equities tips in its favor, and (4) that the order is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). And because some aspects of the requested preliminary injunction require Oshiro to take affirmative steps—that is, they do more than merely prohibit actions and preserve the status quo, but also require Oshiro to take certain mandatory actions—Alpha must also show that there is a "risk of extreme or very serious damage" and the "merits of the case are not doubtful." *Hernandez v. Sessions*, 872 F.3d 976, 997, 999 (9th Cir. 2017) (cleaned up).

At least on the present record—and because, at this time, Oshiro has not challenged Alpha's showing but has instead consented to the entry of the preliminary injunction—Alpha has met its burden. As noted earlier, the court makes these findings provisionally and without prejudice to Oshiro choosing, at a later stage in the case, to challenge any of them.

**A. The Record Supports the Entry of the Preliminary Injunction**

**1. Likelihood of Success on the Merits**

Under the federal Defend Trade Secrets Act (DTSA) and the Hawaiʻi Uniform Trade Secrets Act (HUTSA), the owner of a trade secret may recover damages for its

misappropriation. 18 U.S.C. § 1836; Haw. Rev. Stat. § 482B-1 *et seq.* To prevail on a misappropriation claim, a plaintiff must prove "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020); *accord HH Assocs., U.S., Inc. v. Evans*, 711 F. Supp. 3d 1196, 1213 (D. Haw. 2024) ("Courts in this district have analyzed DTSA and HUTSA claims under the same rubric.").

Alpha has made a sufficient showing, at least at this early stage in the case, that it is likely to succeed on the merits of its federal and state law misappropriation claims. At least some of the documents in Oshiro's possession appear readily to meet the definition of "trade secrets" under the DTSA because Alpha has taken reasonable steps to protect their secrecy and they have economic value because of their secrecy. 18 U.S.C. § 1839(3); *see MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (holding that a customer database qualified as a trade secret where plaintiff company required employees to sign confidentiality agreements and the database's disclosure would benefit the company's competitors).

By downloading Alpha's files to his personal devices and removing them from Alpha's premises, apparently in violation of the terms of his employment, Oshiro likely "used improper means to acquire the trade secret" and so any disclosure or use without Alpha's consent would constitute misappropriation. 18 U.S.C. § 1839(5). And if Oshiro

were to disclose the information, Alpha's competitors could potentially undercut Alpha's pricing in soliciting business from Alpha's customers, satisfying the "threatened damage" requirement. Dkt. No. 2-1, at PageID.51. A court in a misappropriation action under the DTSA may enjoin "any actual or threatened misappropriation" and, "if determined appropriate by the court, requir[e] affirmative actions to be taken to protect the trade secret." 18 U.S.C. § 1836(b)(3)(A)(i), (ii).

For these reasons, the court concludes that Alpha is likely to succeed on the merits of its misappropriation claim. Because Alpha has established that it is likely to prevail in under DTSA and HUTSA, the court need not and does not consider whether Alpha is likely to succeed on its breach of contract and fiduciary duty claims at this time. The court emphasizes that it reaches this conclusion, like all other conclusions in this order, without prejudice to Oshiro's right to challenge them in a future proceeding.

**2. Irreparable Harm**

Alpha has also sufficiently demonstrated that it is likely to suffer irreparable harm in the absence of emergency relief. While Oshiro has asserted that he will not share any proprietary information with Alpha's competitors, Alpha's allegations that Oshiro has already lied in connection with the documents at issue undermine that assertion. *See* Dkt. No. 2-1, at PageID.10–12. The record of Oshiro's handling of these sensitive files, moreover—as established by Alpha's Motion papers and as further described at the October 6, 2026, hearing—demonstrates a serious risk that the files

could be improperly disclosed or used. And if competitors were to come into possession of Alpha's confidential information, they could use it to undercut Alpha on pending and future bids. *See id.* at PageID.74–75, 78. "The loss of clients and market share is not economic loss that can be fully compensated by a damage award, and can constitute 'irreparable harm.'" *WHIC LLC v. NextGen Lab'ys, Inc.*, 341 F. Supp. 3d 1147, 1165 (D. Haw. 2018) (cleaned up); *see also Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."). Here again, the court makes this finding without prejudice.

**3. Balance of Equities**

The next question is the balance of equities and hardships, and it tips in Alpha's favor. In analyzing that balance, "a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." *Univ. of Haw. Pro. Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). It is enough, for current purposes, to note that Oshiro has consented to the entry of the preliminary injunction. The court will reassess this factor if, in a future proceeding, Oshiro chooses to challenge it, and the entry of the preliminary injunction on his consent is done without prejudice to his right to do so.

**4. Public Interest**

The final question is whether the public interest weighs in favor of Alpha's requested relief. It does. Protecting trade secrets, especially by asking a defendant "to do no more than abide by trade laws and the obligations of contractual agreements signed with her employer," serves the public interest. *Schein v. Cook*, 191 F. Supp. 3d 1072, 1078 (N.D. Cal. 2016); *see also Early Warning Servs., LLC v. Brandon O'Loughlin, P.A.Z.E. LLC*, No. 24-7315, 2025 WL 1895313, at *2 (9th Cir. July 8, 2025) ("The injunction . . . serves the public's interest by protecting the secrecy of trade secrets or confidential information."). And, once again, the court notes that it finds this factor weighs in favor of Alpha in substantial part because Oshiro—at this stage and without prejudice to his taking a different position in the future—has consented to the preliminary injunction.

**B. Housekeeping Matters**

Two housekeeping matters remain. First, consistent with Rule 65(d)(2) of the Federal Rules of Civil Procedure, the court's preliminary injunction will extend not only to Oshiro, but also to any officers, agents, servants, employees, and other persons who are in active concert or participation with Oshiro, so long as they "receive actual notice" of the order by "personal service or otherwise." Fed. R. Civ. P. 65(d)(2).

Second, the court does not order any security under Rule 65(c). The court has the discretion to determine "the amount of security required, if any." *Johnson v. Couturier*,

572 F.3d 1067, 1086 (9th Cir. 2009) (cleaned up). At the October 6, 2026, hearing, Oshiro confirmed, through counsel, that no bond was needed.

**PRELIMINARY INJUNCTION**

For the foregoing reasons, Alpha's Motion is GRANTED IN PART as follows:

1. Oshiro is enjoined—whether alone or in concert with any others—from directly or indirectly retaining, disclosing, or otherwise using for any purpose (including, without limitation, solicitation of or communication with Alpha's customers) Alpha's "Confidential Information" (as defined in Alpha's Memorandum in Support, Dkt. No. 2-1), as long as such information remains not publicly known (excluding situations where information becomes publicly known due to Oshiro's or anyone else's unlawful conduct).

2. Oshiro is enjoined to permanently and irrevocably delete all Alpha files (including, without limitation, all Confidential Information) in his possession or custody or control.

3. Oshiro is enjoined to certify, under oath, (a) that he has permanently deleted all Alpha files in his possession, custody, or control, (b) that he no longer possesses any Alpha files or property, and (c) that he has not shared any Alpha files or property with anyone outside of Alpha. Oshiro is further enjoined to identify all electronic storage media (*e.g.*, computers, USB storage devices, email accounts, *etc.*) on which he saved any Alpha property.

4. Oshiro is enjoined to provide Alpha with temporary custody and/or access to any such storage media for the purpose of Alpha's forensic analysis to ensure that there has been no further copying/dissemination of Alpha's Confidential Information. Alpha must return any such storage media to Oshiro, once the forensic analysis has been completed, in working condition.

Alpha's motion is DENIED IN PART, as moot, to the extent it requested an *ex parte* temporary restraining order. Either party is invited to submit motions requesting that this preliminary injunction be modified or dissolved. Finally, the court endeavors to repeat that Oshiro's consent to the entry of this preliminary injunction is without prejudice to his raising a future argument on the merits of any of the analysis in the court's opinion. It does not in any way reflect any admission or concession on any issue presented in this case, beyond the entry of the preliminary injunction itself.

IT IS SO ORDERED.

DATED: October 6, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge